<u>NOT FOR PUBLICATION</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RICHARD WEST,  Plaintiff, | : : : : : : : : : | Civ. No. 05-3564 (GEB)  **MEMORANDUM OPINION** |
| v. | | |
| JAMES DAVY, *et al.*,  Defendants. | | |

**BROWN, District Judge**

This matter comes before the Court upon Plaintiff Richard West's motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. The parties have extensively briefed the matter, and a preliminary injunction hearing was held on August 3, 2005. Having considered the parties' written submissions and oral argument, and for the reasons set forth below, the Court will deny Plaintiff's motion.

**I.      BACKGROUND**

On July 19, 2005, Plaintiff Richard West filed a Complaint seeking temporary restraints and a preliminary injunction against Defendants James Davy ("Davy"), Ann Clemency Kohler ("Kohler"), and Maxim Healthcare Services ("Maxim") (collectively referred to as "Defendants").[1] Plaintiff seeks injunctive relief that would require Defendants to provide private duty nursing

---

[1] Plaintiff asserted claims against Davy in his individual capacity and in his official capacity as Commissioner of the Department of Human Services ("DHS"). Plaintiff further asserted claims against Kohler individually and in her official capacity as Director of Division of Medical Assistance and Health Services ("DMAHS"). In this Opinion, the Court will collectively refer to both Defendants as "State Defendants."

("PDN") services to Plaintiff for seven days a week, eight hours a day.  (Compl. at 5, ¶ 1).

Plaintiff is a fifty-six year old man with muscular dystrophy, and a recipient of Medicaid benefits.  Plaintiff is eligible under the Community Resources for People with Disabilities Program ("CRPD") to receive PDN services in his home.  Maxim is a private organization that has contracted with the State of New Jersey to provide healthcare services under the Medicaid program.  (Supplemental Decl. & Test. of Matthew Kroll ("Kroll Supp. Decl. "), Ex. 3).  Maxim provides, *inter alia*, PDN services to Medicaid recipients.

Upon joining the Medicaid program, Plaintiff entered into an agreement of understanding with the New Jersey Department of Health and Senior Services which noted the Medicaid program's inability to guarantee services requested by Plaintiff.  (*Id.*, Ex. 4).  Plaintiff signed the agreement on February 26, 2003.  Additionally, Plaintiff entered into another agreement with Maxim on May 22, 2003.  This agreement indicated that Plaintiff would receive at least three days written notification, or more if required by the state, prior to any reduction in services.  (*Id.*, Ex. 5).

Since March 28, 2003, Plaintiff's Plan of Care certified that he was eligible for RN/LPN services up to seven days per week, eight hours a day.  (*Id.*, Ex. 6).  During this time, Plaintiff received PDN services from various healthcare providers, including Maxim.  In particular, over the course of more than two years, Maxim has provided Plaintiff with forty-two nurses.  (*Id.,* ¶ 20).  At the time relevant to the Complaint, Maxim provided two nurses to care for Plaintiff every day of the week, eight hours each day.  One nurse provided services five days a week.  The second nurse provided services two days a week, on Wednesday and Thursday.

Due to changes in management, and financial restructuring, Maxim recently reduced the pay rate of its nurses.  (*Id.*, ¶ 9).  The new, lower pay rate was unacceptable to the nurse who was

providing Plaintiff services two days a week, on Wednesday and Thursday. Maxim was unable to find a replacement nurse. On June 6, 2005, Maxim notified Plaintiff that it was no longer able to provide him with a private duty nurse on Wednesday and Thursday as of June 19, 2005. The letter informed Plaintiff that he would continue to receive skilled nursing services five days a week, eight hours a day. The letter further indicated that Plaintiff's case manager had been notified of the change, and included names and phone numbers of three other agencies that provide nursing services.

Although the letter indicated that the change would take effect on June 19, 2005, the nurse continued to provide service until June 29, 2005. To date, Maxim and Plaintiff's case manager have continued to search for a replacement nurse. Maxim offered to make arrangements for the nurse who is currently caring for Plaintiff five days a week to work on Wednesday and Thursday as well. (*Id.*, ¶ 12). Plaintiff did not accept this offer. (*Id.*). Additionally, Plaintiff was notified of other alternatives, including the ability to receive skilled nursing services every day by entering a nursing home. However, Plaintiff prefers to remain in his home. In the interim, Plaintiff has been provided with a Personal Emergency Response System ("PERS"), and is receiving services from a personal care assistant on Wednesdays and Thursdays until a replacement nurse can be provided.

On July 1, 2005, Plaintiff filed a motion for emergent relief with the Director of Division of Disability Services ("DDS"). On July 8, 2005, William Sayre, Administrator of the Home and Community Services of DDS sent a letter informing Plaintiff that his request for relief could not be granted because DDS has not reduced or terminated any services, including PDN care. (Pl.'s Letter Br. in Supp. of Prelim. Inj., Ex. B). Thereafter, Plaintiff filed the Complaint in this action. On July 25, 2005, the Court heard oral argument on the Order to Show Cause why temporary restraints

3

should not be entered. At that time, this Court denied Plaintiff's request for temporary restraints. Subsequently, the parties conducted expedited discovery, and a preliminary injunction hearing was held on August 3, 2005.

## II. DISCUSSION

The "grant of injunctive relief is an extraordinary remedy which should be granted only in limited circumstances." *Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). *See also E.B. v. Poritz*, 914 F. Supp. 85, 90 (D.N.J. 1996) (noting "[t]here is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction."), *rev'd on other grounds*, 119 F.3d 1077 (3d Cir. 1997). The Court must consider four factors in determining whether to grant a motion for a preliminary injunction:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Gerardi v. Pelullo,* 16 F.3d 1363, 1373 (3d Cir. 1994) (citations omitted). An injunction should only be issued if Plaintiff produces sufficient evidence to convince the Court that all four factors warrant injunctive relief. *Am. Tel. & Tel. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). The Third Circuit has placed particular weight on the first two prongs of the four-part test. *Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 197 (3d Cir. 1990).

**A.      Plaintiff Fails to Demonstrate a Reasonable Probability of Success on the Merits**

In the present case, Plaintiff advances two arguments in support of his assertion that he is likely to succeed on the merits. First, Plaintiff contends that Defendants failed to provide him with adequate notice of a reduction or termination of services as required under federal and state law. Second, Plaintiff asserts that Defendants have violated the Equal Access provision of the Social Security Act, 42 U.S.C. § 1396a(a)(30)(A). The Court finds that Plaintiff has failed to demonstrate a likelihood of success on the merits based on these contentions. The Court will address each argument in turn.

**1.      Requirement of Adequate Notice Under Federal and State Regulations**

First, Plaintiff argues that under federal and state law, Defendants were required to provide Plaintiff with proper notice and the opportunity to appeal before nursing services were reduced. Specifically, Plaintiff identifies 42 U.S.C. § 1396a(a)(3) which provides that "[a] State plan for medical assistance must . . . provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness." 42 U.S.C. § 1396a(a)(3) (2005). In addition, Plaintiff contends that Defendants have violated title 10, section 49-10.4 of the New Jersey Administrative Code which states that "[i]n cases of any proposed action to terminate, reduce or suspend assistance, the Medicaid Agent or DMAHS shall give the claimant timely and adequate notice detailing the reasons for the proposed action." N.J. ADMIN. CODE. tit. 10 § 49-10.4 (2005). Although Plaintiff asserts that Defendants have collectively violated these provisions, this Court must separately analyze Plaintiff's claim against the State Defendants and the private organization Maxim.

5

With regard to the State Defendants, the Division of Disability Services ("DDS") contends that Plaintiff's claim fails because DDS has not reduced or terminated services to Plaintiff. Instead, DDS continues to authorize Maxim, or any other approved healthcare organization, to provide Plaintiff PDN services seven days a week, eight hours a day. (DHS's Opp'n at 6). Moreover, the State Defendants assert that Plaintiff acknowledged that services under the CRPD cannot be guaranteed when he signed the February 26, 2003 agreement of understanding.

This Court agrees with the State Defendants. Plaintiff fails to establish the threshold issue whether Medicaid services has been reduced or terminated by the State Defendants, such that the cited federal and state regulations are even applicable under these circumstances. The record shows that Maxim, and not the State Defendants, determined that PDN services could not be provided on Wednesdays and Thursdays because of a specific nurse's inability to agree to work for reduced pay. Plaintiff has not proffered any evidence demonstrating that the State took any part in effectuating this change. Instead, the record indicates that Plaintiff's entitlement to services remains the same, i.e., that Plaintiff is authorized to receive PDN services up to seven days a week, eight hours a day. (*See* Certification of William Sayre ("Sayre Cert."), ¶ 3).

In addition, the record shows that Plaintiff's case manager has been actively searching for a replacement nurse since he was notified of the change in services. This includes a search with other healthcare agencies, including out-of-country providers. (*Id.*, ¶ 4; Certification of Ariadne Demarco ("Demarco Cert."), ¶¶ 6-8). The record further indicates that Plaintiff has been offered PDN services from another healthcare provider, but Plaintiff refused these services. (Demarco Cert., ¶ 9). Plaintiff has also been provided with a PERS while the search continues, and a personal care assistant on Wednesdays and Thursdays. (*Id.*, ¶ 11). These facts, coupled with the agreement of

understanding that services cannot be guaranteed under CRPD, lead to the conclusion that the State Defendants have not taken action to reduce or terminate Plaintiff's Medicaid benefits such that the State Defendants were required to give Plaintiff notice and opportunity to appeal. Based on Plaintiff's failure to provide the Court with sufficient proof on this threshold issue, the Court concludes that Plaintiff fails to demonstrate a likelihood of success on the merits with regard to the State Defendants.[2]

Plaintiff asserts the same argument against Defendant Maxim. In response, Maxim asserts that Plaintiff inaccurately characterizes Maxim as an agency of the State. Maxim argues that it is not a State agency, but rather a private Medicaid provider that has contracted with the State. Significantly, the State Defendants maintain the same position. (Kroll Supp. Cert., Ex. 3a ("Neither DDS nor Maxim (although not an agent of DDS) has reduced or eliminated services for Mr. West.")). Thus, Maxim argues that the notice provisions pursuant to federal and state law are not applicable in this instance, particularly against a private entity such as Maxim.

The Court agrees that Plaintiff fails to establish the threshold issue that Maxim is bound by the notice provisions required by federal and state laws. The evidence shows that Maxim is a private healthcare provider that voluntarily chose to participate in the Medicaid program by contracting with the State of New Jersey. (Kroll Supp. Cert., Ex. 3). Notably, under the agreement, Maxim has the option of cancelling its participation with the program simply by providing thirty days written notice. (*Id.*) Plaintiff fails to provide any evidence to rebut Maxim's position. Instead, Plaintiff merely offers the bald assertion that "[a]s a provider of Medicaid services, Maxim is an agent of

---

[2] State Defendants argue that the matter should be dismissed as to Defendant Kohler, Director of DMAHS, because she does not administer the CRPD services. Plaintiff does not oppose this argument. Accordingly, all claims against Defendant Kohler are dismissed.

DMAHS/Medicaid." (Pl.'s Br. in Supp. of Pl.'s Compl. for Prelim. Inj. ("Pl.'s Br.") at 6). Such a conclusory allegation is insufficient to support a finding that Maxim must abide by the particular notice provisions set forth in federal and state regulations.

Instead, the record supports a finding that Maxim's obligations to Plaintiff are governed by the contract entered into by both parties on May 22, 2003. Pursuant to this contract, Maxim is obligated to provide Plaintiff with at least three days notice prior to any reduction of services. (*See* Kroll Supp. Cert., Ex. 5). Maxim satisfied this obligation by informing Plaintiff thirteen days in advance, on June 6, 2005, that PDN services would no longer be available on Wednesdays and Thursdays beginning on June 19, 2005. (*See id.*, ¶ 5). As the party seeking the extraordinary relief of a preliminary injunction, Plaintiff bears the burden of establishing that Maxim is a State agency, that Maxim is bound by the notice provisions set forth in federal and state regulations cited by Plaintiff, and that the May 22, 2003 contract between Maxim and Plaintiff does not govern the present circumstances. The Court finds that Plaintiff fails to satisfy his burden. Accordingly, Plaintiff does not demonstrate a likelihood of success on the merits as to Defendant Maxim.

### 2. Equal Access Under 42 U.S.C. § 1396a(a)(30)(A)

Next, Plaintiff asserts that he is likely to prevail on the merits of his claim because Defendants have failed to satisfy their obligation of providing equal access to care and services pursuant to 42 U.S.C. § 1396a(a)(30)(A). Under this provision of the Social Security Act, states must ensure that payments for services and care "are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the

geographic area." 42 U.S.C. § 1396a(a)(30)(A) (2005). Plaintiff admits that the State has not changed its rates to providers including Maxim. (Pl.'s Br. at 10). Plaintiff contends, however, that "the State is not reimbursing providers sufficiently in order to attract nurses, thus creating a shortage of nurses willing to provide care." (*Id.*).

In determining whether Defendants have violated this provision, Plaintiff must offer some evidence that would allow this Court to evaluate the level of care and services available to the general population. Plaintiff, however, fails to offer any evidence whatsoever to support this assertion. Plaintiff has not proffered any proof pertaining to the State's level of reimbursement to participating providers, statistics concerning the purported shortage of nurses, or information regarding the access to care and services by members of the general population. Instead, Plaintiff appears to focus solely on his present situation – that Maxim was required to reduce the pay rate of its nurses which resulted in the unavailability of a nurse two days a week – and makes the unsupported assumption that the State has failed to provide equal access to the general population for nursing services because of insufficient funding. Without any evidence supporting this contention, Plaintiff likewise fails to demonstrate a likelihood of success on this basis.

Having concluded that Plaintiff cannot demonstrate a reasonable probability of success on the merits of his claim, the Court need not address the remaining prongs of the preliminary injunction standard. *See N.J. Hosp. Ass'n v. Waldman*, 73 F.3d 509, 512-13 (3d Cir. 1995) (stating that injunctions shall issue "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief"). The Court is without sufficient evidence to enjoin Defendants to provide Plaintiff with a replacement private duty nurse on Wednesdays and Thursdays. Therefore, the Court must deny Plaintiff's motion.

**III.    CONCLUSION**

Based on Plaintiff's failure to satisfy the stringent requirements for this extraordinary form of relief, Plaintiff's motion for a preliminary injunction must be denied.  An appropriate form of Order accompanies this Memorandum Opinion.


Dated:        August 15, 2005


                                                  s/ Garrett E. Brown, Jr.
                                             GARRETT E. BROWN, JR., U.S.D.J.